# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MILES R. HENDERSON,**
        Plaintiff-Counterclaim Defendant,

    v.                                Case No. 08C0839

**U.S. BANK, N.A.,**
        Defendant-Counterclaim Plaintiff,

    v.

**BRIAN VERSEY and**
**MAIN STREET INVESTMENT MANAGEMENT, LLC,**
        Counterclaim Defendants.

## DECISION AND ORDER

Plaintiff Miles R. Henderson commenced this action in state court, contending that a confidentiality and non-solicitation agreement that he entered into with his former employer, defendant U.S. Bank, is unenforceable. Defendant removed the action to this court, and I have jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. Before me now is plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## I. BACKGROUND

As a U.S. Bank employee, plaintiff managed investment portfolios for U.S. Bank clients, working out of an office in Sheboygan, Wisconsin. On September 11, 2008, he resigned to start a competing investment firm, Main Street Investment Management, LLC, with another former U.S. Bank employee, Brian Versey. (Versey and the investment firm are parties to this suit in connection with U.S. Bank's counterclaims, but for purposes of

the present motion, Versey, the investment firm, and U.S. Bank's counterclaims can be ignored.)

As a condition of his employment, U.S. Bank required plaintiff to sign a "Confidentiality and Non-Solicitation Agreement."[1] This agreement includes provisions restricting plaintiff's ability to use or disclose U.S. Bank's confidential information and prohibits him from contacting or soliciting certain of U.S. Bank's current and prospective customers for a period of one year after termination of his employment. Plaintiff argues that the agreement is invalid on its face and that therefore he is entitled to judgment on the pleadings.

## II. DISCUSSION

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standards governing motions to dismiss under Rule 12(b)(6). Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 633 (7th Cir. 2007). The court must accept as true the nonmovant's version of the facts and may not resolve factual disputes. The court may not consult materials outside the pleadings when identifying facts, although it may consider a document not attached to the pleadings if there is no factual dispute as to its contents and it is referenced in the pleadings and central to a claim. McCready v. eBay, Inc., 453 F.3d 882, 891-92 (7th Cir. 2006).

Initially, I must resolve a dispute between the parties over whether I can even consider the Confidentiality and Non-Solicitation Agreement. Plaintiff attached the agreement to his original complaint in state court. However, before defendant filed its

---

[1] A full copy of the agreement is appended to this Decision and Order.

answer, plaintiff amended his complaint, and although he alleged that a copy of the agreement was attached to the amended complaint, in fact no copy was attached. When defendant answered the amended complaint, it admitted that plaintiff had signed a confidentiality and non-solicitation agreement but denied that a copy of the actual agreement was attached to the amended complaint. Realizing his error, plaintiff attached a copy of the agreement to his motion for judgment on the pleadings. Although defendant does not explicitly concede that the agreement attached to the motion for judgment on the pleadings is a true and accurate copy of the parties' agreement, defendant does not deny that the contents of the parties' actual agreement are identical to the contents of the agreement attached to the motion. Thus, because the contents of the agreement are undisputed and the agreement is referred to in the pleadings and central to plaintiff's claim, I may consider it without converting the present motion into one for summary judgment. Id.

Next comes the parties' dispute over choice of law. The agreement states that it is governed by Minnesota law, but plaintiff argues that Wisconsin courts would not enforce a choice-of-law clause in a noncompete agreement. The choice-of-law determination is significant because plaintiff does not contend that the agreement is invalid under Minnesota law.

When a district court exercises diversity jurisdiction, it must apply the choice-of-law principles of the state in which it sits. Tanner v. Jupiter Realty Corp., 433 F.3d 913, 915 (7th Cir. 2006). Under Wisconsin's choice-of-law principles, a contractual choice-of-law provision will be enforced only if enforcement would not contravene "'important public policies of the state whose law would be applicable if the parties' choice of law provision

3

were disregarded.'" Drinkwater v. Am. Family Mut. Ins. Co., 290 Wis. 2d 642, 652 (2006) (quoting Bush v. Nat'l Sch. Studios, Inc., 139 Wis. 2d 635 (1987)). Before the court can determine whether enforcing the choice-of-law clause would contravene important public policies of the state whose law would otherwise apply, the court must perform a choice-of-law analysis and identify the otherwise-applicable law. Id. at 654.

In Wisconsin, the "first rule" of choice of law "'is that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance.'" Id. at 658 (quoting State Farm Mut. Auto. Ins. Co. v. Gillette, 251 Wis. 2d 561 (2002)). When assessing the significance of nonforum contacts in a contract case, Wisconsin courts apply the so-called "grouping of contacts" rule, and select the law of the state "with which the contract has its most significant relationship." Gillette, 251 Wis. 2d at 577 (internal quotation marks omitted). Under Wisconsin law, "[r]elevant contacts include: [1] the place of contracting; [2] the place of negotiation of the contract; [3] the place of performance; [4] the location of the subject matter of the contract; and [5] the respective domiciles, places of incorporation and places of business of the parties." Sybron Transition Corp. v. Sec. Ins. Co. of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997) (internal quotation marks omitted). This approach is not a quantitative one in which the court merely counts the contacts; instead, the court must qualitatively assess which contacts are significant and where those contacts are found. Id.

If after applying the grouping of contacts approach the court cannot clearly identify a state having the most significant relationship with the contract, then the court applies five choice-influencing considerations: (1) predictability of results, (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the

4

forum's governmental interests; and (5) application of the better rule of law. Drinkwater, 290 Wis. 2d at 658.

As the statement of the above principles reveals, performing a choice-of-law analysis under Wisconsin law is fact-intensive. However, the only facts that the pleadings establish are that plaintiff resides in Wisconsin and worked for U.S. Bank out of an office located in Wisconsin, and that U.S. Bank has its corporate headquarters in Minnesota. Nonetheless, it is clear from these facts that Wisconsin has the most significant relationship with the contract. The only significant contact with a state other than Wisconsin is the location of U.S. Bank's headquarters. Qualitatively, this contact cannot outweigh the contacts with Wisconsin – namely, that the employment activities giving rise to the agreement took place in Wisconsin, that plaintiff resided in Wisconsin, and that plaintiff worked out of one of U.S. Bank's Wisconsin offices rather than U.S. Bank's headquarters in Minnesota. Although defendant suggests that discovery could reveal other non-Wisconsin contacts, defendant has not hypothesized any set of circumstances under which non-Wisconsin contacts could plausibly be deemed to be of greater significance than the Wisconsin contacts. Yet, to advance past the pleading stage of a case, a litigant must present a plausible legal theory showing that there might exist some set of factual circumstances under which the litigant could prevail on a claim or issue. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).[2] Here, defendant has argued that "other

---

[2]Although Twombly discusses pleading standards, its rationale – that a litigant must at the pleading stage do enough to raise the possibility of a judgment in its favor above the speculative level before the opposing party will be required to incur the expense of discovery – applies with equal force to a defendant seeking to avoid judgment on the pleadings. Although a defendant need not plead all facts that support its defenses in its answer, it must be able to articulate in opposition to a motion for judgment on the pleadings

5

facts" might be developed showing that Minnesota has a more significant relationship with the agreement than Wisconsin, but it has not suggested what those facts might be. Unless a large number of plaintiff's clients were located in Minnesota (which U.S. Bank does not suggest), it is highly improbable that further discovery and fact-finding would change the choice-of-law determination. Therefore, I find that the agreement has the most significant relationship with Wisconsin and that its law would apply in absence of the choice-of-law clause. It follows that the clause is unenforceable because Wisconsin public policy concerning restrictive covenants in employment contracts is sufficiently important such that it would override the parties' contractual selection of Minnesota law. Drinkwater, 290 Wis. 2d at 653 (citing Beilfuss v. Huffy Corp., 274 Wis. 2d 500 (Ct. App. 2004)). Accordingly, I analyze plaintiff's arguments under Wisconsin law.

In Wisconsin, covenants not to compete are regarded with suspicion because the law seeks to encourage the mobility of workers. See, e.g., Farm Credit Servs. of N. Cent. Wis., ACA v. Wysocki, 243 Wis. 2d 305, 312 (2001). Wisconsin's policy towards restrictive covenants is codified at Wis. Stat. § 103.465, which provides as follows:

> **Restrictive covenants in employment contracts.** A covenant by an assistant, servant or agent not to compete with his or her employer or

---

a factual scenario under which the court could plausibly find in its favor on a claim or issue, just as a plaintiff faced with a motion to dismiss must be able to show that a plausible basis for relief can be inferred from the facts pleaded in the complaint. See Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041-42 (7th Cir. 1999) (holding that although plaintiff need not identify legal theory in complaint, it must do so in opposition to motion to dismiss); Stransky v. Cummins Engine Co., Inc., 51 F.3d 1329, 1335 (7th Cir. 1995) (same); see also Klug v. Chicago Sch. Reform Bd. of Trs., 197 F.3d 853, 861-62 (7th Cir. 1999) (Rovner, J., concurring) (same). If a litigant cannot even hypothesize a set of facts under which it could plausibly prevail, discovery and further fact-finding would be a waste of resources because no amount of factual development will result in a record favorable to the litigant.

6

> principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

An important feature of this statute is that it forbids judicial modification of an unreasonable restrictive covenant. See Streiff v. Am. Family Mut. Ins. Co., 118 Wis. 2d 602, 607-09 (1984). Thus, if a restrictive covenant is at all unreasonable, the entire provision is unenforceable, even to the extent that it is reasonable.

Plaintiff argues that the Confidentiality and Non-Solicitation Agreement contains several unreasonable restrictive covenants. However, to show that these restrictive covenants are unreasonable based on the pleadings alone, plaintiff must demonstrate that they are unreasonable on their face and without reference to any disputed facts – that is, that they are unreasonable per se. This is a heavy burden, because courts normally consult the totality of the circumstances before deciding whether a restrictive covenant is reasonable. Farm Credit Servs., 243 Wis. 2d at 317; Rollins Burdick Hunter of Wis., Inc. v. Hamilton, 101 Wis. 2d 460, 468-71 (1981).

Plaintiff first argues that the agreement is unenforceable because it contains a non-disclosure provision that indefinitely restricts his ability to disclose U.S. Bank's confidential information. This provision provides that plaintiff will not "at any time either during or subsequent to [his] employment . . . disclose or transmit, directly or indirectly, any Confidential Information of U.S. Bank." (Agreement § 3 (emphasis added).)[3] According

---

[3]The agreement also contains a non-solicitation clause that, among other things, prohibits plaintiff from using U.S. Bank's confidential information to solicit customers.

7

to plaintiff, a nondisclosure provision is a restraint on trade and will be deemed unreasonable per se under Wis. Stat. § 103.465 unless it contains an express time limitation.

In Gary Van Zeeland Talent, Inc. v. Sandas, the Wisconsin Supreme Court held that a provision in an employment agreement restricting a former employee's disclosure of confidential information was a restraint on trade and subject to Wis. Stat. § 103.465. 84 Wis. 2d 202, 218 (1978); see also Tatge v. Chambers & Owen, Inc., 219 Wis. 2d 99, 111-12 (1998) (finding that Wis. Stat. § 103.465 applies to nondisclosure provision). Accordingly, nondisclosure provisions must be reasonable, just as any restraint on trade subject to § 103.465 must be. To determine whether a restraint is reasonable under § 103.465, Wisconsin courts usually examine five factors: (1) whether the agreement is necessary to protect the legitimate business interests of the employer; (2) whether it is reasonable as to duration; (3) whether it is reasonable as to geography; (4) whether it is reasonable as to the employee; and (5) whether it is reasonable as to the general public. Chuck Wagon Catering, Inc. v. Raduege, 88 Wis. 2d 740, 751 (1979); see also Farm Credit Servs., 243 Wis. 2d at 317 (remanding case for factual development as to reasonableness of restrictive covenant in light of employer's legitimate business interests); Rollins Burdick Hunter, 101 Wis. 2d at 468 (stating that restrictive covenant must be reasonably necessary for protection of employer's legitimate interests but not oppressive and harsh on employee or injurious to interests of general public).

---

(Agreement § 5(iii).) However, this provision is limited to one year following the termination of plaintiff's employment, and I discuss it separately below.

Although Wisconsin courts normally apply this five-factor test when evaluating a restrictive covenant, several courts have dispensed with this analysis when discussing restrictive covenants lacking time limitations and have seemingly concluded that the lack of a time limitation renders a restrictive covenant unreasonable per se. <u>Nalco Chem. Co. v. Hydro Techs., Inc.</u>, 984 F.2d 801 (7th Cir. 1993) (applying Wisconsin law); <u>SYSCO Food Servs. of E. Wis., LLC v. Ziccarelli</u>, 445 F. Supp. 2d 1039, 1052 (E.D. Wis. 2006) (applying Wisconsin law); <u>Gary Van Zeeland</u>, 84 Wis. 2d at 218-19; <u>Holsen v. Marshall & Ilsley Bank</u>, 52 Wis. 2d 281, 287 (1971). Other courts, however, have indicated that under some circumstances, such as where the nondisclosure provision is designed to protect trade secrets or intellectual property, the lack of a time limitation is not fatal. <u>IDX Sys. Corp. v. Epic Sys. Corp.</u>, 285 F.3d 581, 585-86 (7th Cir. 2002) <u>Nalco</u>, 984 F.2d at 803; <u>Techworks, LLC v. Wille</u>, __ Wis. 2d __, 2009 WL 818970, at ¶ 15 n.2 (Ct. App. 2009). Here, U.S. Bank contends that at least some of the materials subject to the nondisclosure provision contain trade secrets. (<u>See</u> Counterclaims, Answer & Aff. Defenses at 19-20.) And because this case has not progressed beyond the pleadings, no facts have been developed that would allow me to determine whether the materials qualify for trade secret status or whether other reasons might justify indefinite confidentiality.[4] Therefore, I cannot

---

[4] Defendant contends that some of the information constitutes the nonpublic personal information of its customers and must be protected indefinitely pursuant to the privacy provisions of the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809. Although protecting customer privacy might justify indefinite protection of some of the information, I note that much of the information subject to the provision has nothing to do with customer privacy, such as U.S. Bank's "research and development strategies" and its "compensation data." (Agreement § 1(ii).)

9

conclude at this time that the nondisclosure provision is unreasonable per se for lack of a time limitation.

Plaintiff next argues that the non-solicitation provision of the agreement is unreasonable per se. The non-solicitation provision states that during his employment with U.S. Bank and for one year thereafter, plaintiff will not (1) contact for purposes of solicitation any U.S. Bank customers for whom he "directly performed any services" or with whom he had "any direct business contact"; (2) contact for purposes of solicitation any of the customers or prospective customers of U.S. Bank "whose identity or other customer specific information [he] discovered or gained access to as a result of [his] access to U.S. Bank's Confidential Information"; or (3) "utilize U.S. Bank's Confidential Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank" to direct their business to him. (Agreement § 5.)

Plaintiff's first challenge to the non-solicitation provision is that it is unreasonable per se because it is not limited to a specific geographic area. However, the Wisconsin Supreme Court has held that restrictive covenants lacking territorial limitations expressed in geographic terms are not unreasonable per se. Farm Credit Servs., 243 Wis. 2d at 312-17; Rollins Burdick Hunter, 101 Wis. 2d at 465-67; see also Nalco, 984 F.2d at 803 (stating that under Wisconsin law a restrictive covenant need not contain a geographic limitation); Hillis v. Waukesha Title Co., Inc., 576 F. Supp. 1103, 1106 (E.D. Wis. 1983) (holding that under Wisconsin law "a restrictive covenant is not per se invalid merely because it lacks an express geographic limitation."). Although plaintiff cites several decisions in which Wisconsin's intermediate appellate court invalidated restrictive covenants that did not contain geographic limitations, Equity Enters., Inc. v. Milosch, 247 Wis. 2d 172 (Ct. App.

10

2001); Mut. Serv. Cas. Ins Co. v. Brass, 242 Wis. 2d 733 (Ct. App. 2001), those cases are distinguishable.[5] Even if they were not, in a diversity case I must apply state law as interpreted by the state's highest court. Pisciotta, 499 F.3d at 634. Accordingly, I must follow the Wisconsin Supreme Court's approach and conclude that the non-solicitation provision is not unreasonable per se for lack of a geographic limitation.

Plaintiff's remaining challenges to the non-solicitation provision involve his contention that the provision is unreasonably overbroad in several respects.[6] First, he argues that the provision is overbroad because it applies not just to U.S. Bank but also to U.S. Bank's "affiliated companies." (See Agreement, preamble.) Plaintiff argues that because he never worked for any of U.S. Bank's affiliated companies, the agreement is overbroad as applied to him. Initially, I note that this argument depends on facts not established by the pleadings – namely, that plaintiff never worked for U.S. Bank's affiliated companies. However, U.S. Bank does not suggest that plaintiff did in fact work for any of its affiliated companies, and thus I assume for purposes of this motion that he did not. But if plaintiff had no association with U.S. Bank's affiliated companies, then the provision's reference to affiliated companies is irrelevant. Plaintiff is prohibited from soliciting only

---

[5]Although Equity Enterprises seemingly found a restrictive covenant invalid per se for lack of a geographic restriction, the court's analysis makes clear that its decision was based on the provision's unreasonableness under the particular facts of that case. 247 Wis. 2d at 186 n.4 (concluding that restriction was not narrowly tailored to a customer list). In Brass, the court invalidated a restrictive covenant not because it lacked a geographic restriction but because of its similarity to a restrictive covenant invalidated by the Wisconsin Supreme Court in an indistinguishable case. 242 Wis. 2d at 743.

[6]Some of plaintiff's overbreadth challenges apply to both the non-solicitation provision and the non-disclosure provision. However, the analysis is the same for both provisions, and for simplicity's sake I discuss plaintiff's arguments only in connection with the non-solicitation provision.

11

those customers for whom he directly performed services or with whom he had direct business contact, as well as customers or prospective customers whose identity he learned because of his access to confidential information. If plaintiff had no association with U.S. Bank's affiliated companies, he would not have performed services for their customers or had access to confidential information about them. Thus, the non-solicitation provision would not apply to those customers. I therefore cannot conclude based on the pleadings alone that the agreement is unreasonable because of its reference to affiliated companies.

Plaintiff next argues that the agreement's definition of "Confidential Information" is overbroad, and that for this reason the non-solicitation provision, which incorporates the definition, is also overbroad. Plaintiff argues that the definition treats publicly available materials as confidential information, such as the names and addresses of U.S. Bank's prospective customers and certain of U.S. Bank's policy or procedural manuals. However, the pleadings do not establish that these materials are publicly available. For instance, although plaintiff argues that a list of the names and addresses of U.S. Bank's "prospective customers" is essentially the phone book (because anyone is a potential customer), U.S. Bank contends that it is interested in protecting only information that is not publicly known (such as a list of prospective customers generated from its own research and analysis). The facts surrounding these matters must be developed further before I can determine whether the definition of confidential materials is overbroad.

Finally, plaintiff argues that the non-solicitation provision is overbroad because it applies to U.S. Bank's prospective customers. As noted, the provision prohibits plaintiff from soliciting U.S. Bank's prospective customers if plaintiff had contact with them during his employment at U.S. Bank or had access to confidential information about them.

12

Plaintiff argues that Wisconsin law does not under any circumstances allow employers to protect prospective customers from solicitation by former employees. However, plaintiff has not cited, and I have not found, any case from a Wisconsin appellate court stating that restricting a former employee's ability to solicit prospective customers with whom he had contact during his employment or about whom he had confidential information is unreasonable per se. Although plaintiff points to a case from a federal district court finding a non-solicitation provision unreasonable based on its application to prospective customers, that court did not find the provision unreasonable per se but rather unreasonable based on the facts developed at a preliminary injunction hearing. JT Packard & Assocs., Inc. v. Smith, 429 F. Supp. 2d 1052 (W.D. Wis. 2005). Further, another district court has concluded that Wisconsin has no "flat rule invalidating all restrictive covenants whose scope exceeds the former employee's actual customer contact." Hillis, 576 F. Supp. at 1106. Thus, whether the non-solicitation clause is unreasonable because it restricts plaintiff's ability to solicit prospective customers is a matter that can be determined only after further factual development and an examination of whether it is necessary to protect U.S. Bank's legitimate business interests.

Because no provision of the Confidentiality and Non-Solicitation Agreement is unreasonable per se, plaintiff's motion for judgment on the pleadings will be denied. Whether the provisions are unreasonable is something that can be determined only after all relevant facts and circumstances have been taken into account.

13

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for judgment on the pleadings is **DENIED**.

Dated at Milwaukee, Wisconsin, this 11 day of May, 2009.

/s_____
LYNN ADELMAN
District Judge

14



# CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

In consideration of U.S. Bank National Association, or its affiliated companies (hereinafter referred to as U.S. Bank), employing me, and in consideration of (a) the compensation to be paid to me by U.S. Bank, (b) the support services and facilities provided to me, (c) the access to confidential information provided to me, and (d) for other good and valuable consideration, I agree that:

1. I will treat as confidential all records of U.S. Bank whether in original, duplicated, copied, recorded, computerized or other form, that contain or refer to confidential or proprietary information of U.S. Bank or its customers (collectively "Confidential Information"), including without limitation the following:

    (i) the names, addresses, and telephone numbers of its customers and prospective customers (collectively "customers"), the investment portfolios of its customers and any information concerning customers' past, present, or future investment activities, any documents or records reflecting work in process, and any information relating to U.S. Bank's customers' banking or trust relationships, customers' income, net worth or other business or personal financial information; and

    (ii) any information concerning U.S. Bank's methods, operations, financing, services, pricing information, compensation data, pending projects and proposals, research and development strategies, production reports, financial and marketing information, technological developments, software, computer systems, techniques, processes, as well as policy or procedure manuals or training materials; and

    (iii) any other secret or confidential information relating to the products, services, customers, sales, technology and business affairs of U.S. Bank.

2. I recognize that such Confidential Information constitutes a unique and valuable asset of U.S. Bank acquired at great expense by U.S. Bank and any disclosure or other use of such information other than for the sole benefit of U.S. Bank would be wrongful and would cause irreparable harm to U.S. Bank.

3. I will not at any time either during or subsequent to my employment with U.S. Bank disclose or transmit, either directly or indirectly, any Confidential Information of U.S. Bank to any person, firm, corporation, association or other entity, and will not remove this information, whether in original, duplicated or copied form, from the premises of U.S. Bank, except as required in the ordinary course of U.S. Bank's business. I will keep Confidential Information secret and in strict confidence during the term of this Agreement and at all times thereafter and will not disclose any of such information except to the extent such disclosure:

    (i) is necessary for the performance of my duties,
    (ii) is required by applicable law, or
    (iii) is authorized in writing by an Executive Vice President of U.S. Bank.

U.S. Bank Human Resources            Page 1 of 3



Case 2:08-cv-00839-LA   Filed 05/11/09   Page 15 of 18   Document 59



4. In the event of my voluntary or involuntary termination from U.S. Bank, for any reason, I will immediately return all Confidential Information of U.S. Bank, including any original, computerized or duplicated records or portions of records.

5. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not, directly or indirectly, on behalf of myself or on behalf of any other individual, association or entity, as an agent or otherwise:

    (i) contact any of the customers of U.S. Bank for whom I directly performed any services or had any direct business contact for the purpose of soliciting business or inducing such client to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    (ii) contact any of the customers or prospective customers of U.S. Bank whose identity or other customer specific information I discovered or gained access to as a result of my access to U.S. Bank's Confidential Information for the purpose of soliciting or inducing any of such customers or prospective customers to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    (iii) utilize U.S. Bank's Confidential Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank to divert or direct their business to me or any other person, association or entity by or with whom I am employed, associated, engaged as agent or otherwise affiliated.

6. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not, directly or indirectly, encourage, induce or entice any employee of U.S. Bank with access to or possession of Confidential Information to leave U.S. Bank's employment.

7. I agree that this agreement may be assigned by U.S. Bank to any acquirer, purchaser, successor in interest or other third party without giving me notice, obtaining my prior consent, or providing me additional consideration.

8. I consent to the issuance of a temporary restraining order or a preliminary injunction by a court to prohibit and enjoin the breach of any provision of this Agreement.

9. I represent that I am not subject to any non-competition, non-solicitation, confidentiality or similar restriction to a former employer that would prevent me from performing my essential job functions for U.S. Bank. I also represent that I have no confidential information of a former employer in my possession.

10. This Agreement will be governed by the laws of the State of Minnesota.

Case 2:08-cv-00839-LA   Filed 05/11/09   Page 16 of 18   Document 59



11. The provisions of this Agreement are severable. In the event any provision of this Agreement is found to be unenforceable, in whole or in part, the remainder of this Agreement will nevertheless be binding and enforceable.

11. All obligations under this Agreement will survive the termination of my employment with U.S. Bank.

12. I understand that nothing in this Agreement requires me to continue employment with U.S. Bank for any particular length of time or requires that U.S. Bank continue to employ me for any particular length of time.

I HAVE CAREFULLY REVIEWED THIS AGREEMENT PRIOR TO SIGNING IT, AND I UNDERSTAND ITS TERMS.

_____
Print Your Full Legal Name Here

_____            _____
Signature                                  Date

NOTE: In order to facilitate the new hire process and insure proper payroll processing, the signed original of this document must be returned to your HR Representative prior to starting employment. If you are in doubt of where to return agreement, please send to:

U.S. Bank Human Resources
800 Nicollet Mall
BC-MN-H17B
Minneapolis MN 55402